The first case for argument, there are actually two cases which we've consolidated for purposes of argument, 15-1015 and 15-1136, General Electric v. Vibrant Media. Mr. Casey. Thank you, Your Honor. May it please the Court, I believe I reserve five minutes for rebuttal. Yes, sir. To Michael Casey on behalf of the Patent Owner, General Electric, and in these appeals, the Patent and Trial and Appeal Board incorrectly found that the appealed claims are obvious over a number of references, including Van Hoff and Anthony. This is primarily a substantial evidence case, right? It is, Your Honor. So what's the matter with the Board's determination that these two prior references disclose the plurality of class codes and the major class codes? So, Your Honor, the problem is that the testimony that the Patent Office relied on of Dr. Heller, in fact, during cross-examination of his reply declaration, contradicted what he said in his opening brief. So essentially, he stepped away from the evidence that the Board relied on. So there is no longer… This is the moons of Jupiter thing. So, no, Your Honor, this is actually… Well, there's two parts, but the first part I was thinking of was in Van Hoff itself. They talk about a hierarchical structure of five different areas, and in that description, Dr. Helmer says that it must mean that there are he admitted that it is possible instead to build a system like that that only has one class code per level. So he read into something… How does that help you? I mean, the fact that you could build a system that only has one class code doesn't mean that it doesn't disclose using a plurality. So, Your Honor, the actual text that's here doesn't say anything about a plurality. It only says that the annotation including hyperlinks may be provided in a hierarchical format, and then they say when a term in the document satisfies the match pattern in the annotation, the link may reflect this hierarchy, and as a result, there is no explicit disclosure that the portion relied on by the Board means that there are plural links, plural class codes. But the Board also relied on the first sentence in that paragraph where it says including hypertext links may be provided in a hierarchical format, and then the paragraph ends with a listing of what that hierarchical format would be, topics such as medical oncology, melanoma, etc. So it looked like to me the Board read this reference and made a finding as to how the Board understood this passage, and where it's class codes and hyperlinks. So, Your Honor, I think that the Board did not make a finding that the annotation links, plural, would have all come from the same database. The Board's decision is actually silent on that. It doesn't say that those links are all stored in the database. Even if they say there's an annotation that has links, there is no evidence, no substantial evidence, there is no evidence at all, let alone substantial evidence, to show that those links are multiple links stored in a database such that a matching linkable character string has multiple class codes. The paragraph right before the section cited by the Board, column 8, and I'll refer to the 065 patent share comment specification, say that any links present in the document at the time of the request will be allocated a higher relevance indicator than hyperlinks added after the user's request and annotation. So that means that even if there is a word that has multiple links, it doesn't mean that they came from a database such that there were plural class codes. But the Board found that this disclosure reflected the claim limitation, right? The Board did, Your Honor, but not on substantial evidence. In fact, the fact that... But why couldn't they say that the part that Judge Chen read to you supports our conclusion? Because the unrebutted testimony of Dr. Hellman is that, in fact, this passage does not inherently mean what he initially said he thought it meant. Where does he say that? He says that, Your Honor, in A1988-A1989, and he was asked if he could build a system that has only one relevance indicator per linkable character string, and the words would still be used to reflect a hierarchical cross-reference list in order of increasing specificity. And he said, yes, a system like that could physically be built. So the only way that the Board could find, by a substantial evidence... Wait a minute, wait a minute. What you just said, A1988? Yes, ma'am. What he said, he said, well, so yes, I think I would agree with that. Is that what you're talking about? His answer was systems like that could be physically built, yes. Well, so what? I mean, what is that? How does that contradict the Board's finding? It contradicts it because it shows that this passage doesn't mean, doesn't inherently mean, what the Board is saying it thinks it means, and as a result... Well, why does it mean that? I mean, he's saying a system could be built this way. Why does that contradict the notion that the disclosure tells you that a hierarchical system could be built? Both what he's talking about here in the quote and the site from the patent are, in fact, talking about a hierarchical system, Your Honor. There is no indication that you have to... In order to have a hierarchy, the hierarchy that's listed is medical, oncology, melanoma, treatment, and radiation. So, if there's a word that has to do with radiation treatment of melanoma, which is a kind of cancer and it's medical, there's nothing in this that says that there is some word, let's call it x-ray. X-ray can be a kind of radiation that's used in treatment that treats melanoma, which is kind of cancer, but it doesn't say that x-ray or any other word has multiple class codes associated with that word. Just because there's a hierarchy doesn't mean that there's multiple things at each level of the hierarchy. Yeah, but he's still saying that multiple things at each level of the hierarchy is disclosed by Van Hoff, isn't he? So, you can have multiple words at each level of the hierarchy, Your Honor, without having multiple class codes, right? You could have... Well, I understand what you're saying, but even though he says you could build a system that didn't satisfy the claim limitations, that doesn't contradict his statement that Van Hoff discloses what's claimed in the patent. He wasn't asked whether or not you could build a system that doesn't read on the patent. He was asked whether or not this paragraph inherently means what he thought it meant initially. And he had to admit that you could build a system... So, Van Hoff is talking about building a system. And the system has a hierarchy of five levels of increasing specificity. At no point does it say that there's multiple class codes. The actual words never say there's any linkable character string here that has multiple class codes. Yeah, but he's also saying common sense would cause you not to do that. He's saying that there would be no reason to build a system like that. And that what he's saying is that if you read Van Hoff using common sense, you would do what the patent claims. So, Your Honor, I don't think that he's saying that at all because the common sense factor is cut against exactly by the fact that if it was... What does he mean when he says it would be bizarre, but it is possible? That's what his response was. It would be bizarre, but it is possible. I don't know what he meant by that, Your Honor. What he said was that this text doesn't mean what he thought it meant initially. He doesn't say that. On these pages that you've cited to us that we've been looking at, this question and answer about the systems? Yes, Your Honor. Let me get that out of the way. So, the testimony that is here at A1988 where he says, I think the implication of Van Hoff is that you would present multiple destination addresses, each with their own relevance index, and order them based on relevance index. He doesn't say that those linkable character strings are received from the same database. He also... So, he says he can't imagine why you would want to insert the word medical without a link to the word medical in such an annotation. So, he says there would be one relevance indicator per destination address. What we're finding is that he says... Well, after he says that, the question is, I'm not asking you what you want. I'm asking you, could such a system be physically built? Yes, Your Honor. So, we're no longer talking about Van Hoff's disclosure. We're talking about whether such a system could be physically built. What we're talking about is whether or not the words of Van Hoff inherently mean that there must be multiple class codes per linkable character string. So, for example, Your Honor, let's say that the word... Must or can. There must be or there can be. If it can be, then you have to show that it was. If it must be, then you can say it was inherent. No, if you can show it can be and that would be the only common sense way of doing it, isn't that sufficient? Only if you can show that it was the only common sense way. Well, that's what he said, isn't it? So, Your Honor, what ends up happening is if the word was x-ray and there were multiple class codes for x-ray, when you come across the word x-ray in the system of Van Hoff, which of the destination addresses do you put in? There are two choices. That's why it's not common sense. The reality is that they're going back and reading Van Hoff in light of the applicant's invention and trying to shoehorn it in to say, well, we see that it would have been common sense to do this. Well, if that's the case, Your Honor, it segues us over to the commercial success. If that was the common sense, if it was obvious to do it, then people would have done it before and didn't. And it wasn't until this invention came along that you were able to do things like provide context-sensitive links to information by utilizing these major class codes. What's missing from Van Hoff is any indication that you would be able to say, hey, in this context, Apple means a fruit versus a computer company. Or in the context of the patent, that New York relates to a city or a sports team. And the only way to do that is with class codes. In the context of what Van Hoff is describing, this hierarchy, you don't need to distinguish between, or he doesn't say, he hasn't even figured out the problem of distinguishing between Apple, the computer, and Apple, the fruit. Or New York, the city, and New York, the location of a sports team. So that's the problem. They're trying to read into something words that don't exist in the presence of what I think is their argument that says, including hypertext links plural. But the links plural doesn't teach you that all the links are coming from the database such that there would inherently be multiple class codes. In fact, the very sentence before this shows us that, or the very paragraph before shows you that there could already have been links in the reference. So there's already a link to Apple. You find that one of the words you're supposed to hypertext is Apple. They add a second one. Now there are multiple links. But that doesn't mean that there was multiple class codes in the database so that you can do the operations that give us the commercial success that applicants are able to achieve. So the reality is, your honors, that there is no substantial evidence that provides the basis for the PTAB to have said that this section describes multiple class codes per linkable character string. The words aren't there literally, and it isn't there implicitly. Also, in Anthony, what they're trying to do is take Anthony and reverse the operation of Anthony. There are multiple words which may link to a topic of Jupiter's moon. And you can do moons of Jupiter, which goes to the text, or Jupiter's moon that goes to the text. But it's the reverse of what's being claimed, your honor. What's being claimed is that the linkable character string has multiple class codes. What they're instead doing is that there are multiple words that can go to the same linked text. And as a result, the operations are both opposite and don't meet the claim language. Your honor, I'm already into my rebuttal time. May it please the court. Matt Lowry on behalf of the Appellee Vibrant Media. I'm glad that we agree that the standard of review, we being the parties, is fact-finding, substantial evidence standard. The only exception to that would be abuse of discretion on the motion to exclude that was denied. It's not argued in the reply brief. I'm not sure if it's still in, but that would be a technicality. I think I'd like to start with what the court was questioning about, which is the fact-finding that Van Hoff discloses multiple codes and destination addresses. And I think the substantial evidence, which is what we're looking for here, is plain. Van Hoff has the language using the plural for an annotation. And the board said, it's not just that sentence, in the context of Van Hoff as a whole, this is the way we read it. Now one might argue the next sentence says link, and there's an issue there. And if there is an issue, it's a fact issue, and the board made its finding not just on those two sentences, but Van Hoff as a whole, and remembering the level of skill in the art, which of course is the way the reference is read, is a high level. It's a bachelor's in, I think, computer science or engineering, and several years of graduate experience, or real-life experience, which is at the graduate side during nearly a PhD. There is also the knowledge in the art that Dr. Hellman testified about. There's databases, there's one-to-many and many-to-one. These are all common known techniques, and that is the context in which Van Hoff is read, and it's unrebutted. In fact, on the motivation to combine side, we cite the portion where the board found that everything in the patent that it was looking at was a known technique being applied with a predictable result. And that is, under KSR, enough before you get the motivation to combine. But in addition, that's the context in which these references are read. And then the last part is common sense. Dr. Hellman talked about the hierarchy of relevance and the tags, and going to more than one destination, and that's all disclosed in Van Hoff. I'd like to address something that I think was new on appeal, although that's not the focus of my argument, which is that Van Hoff says, here's an annotation, and there's multiple codes, medical, oncology, melanoma, and multiple links. It actually says links. That's plural. And the argument is, well, that's the annotation, but that's not necessarily in the database. And if it's not in the database, where in the world is it coming from? Because there is nothing in Van Hoff that gives you any place for it to come from in all of the embodiments other than the annotation database. That's the only place that that information exists. There is a possibility for a user to put in other codes, but that's like a sub-embodiment. It's a one embodiment. It's not the invention as a whole. And on top of that, there's substantial evidence supporting the board's finding, not the least of which is Dr. Hellman talking about databases and how these would be stored in databases and there would be multiple places in the database. In connection with the purported impeachment of Dr. Hellman about being able to build a particular system, I'd actually first make the point that whether he was successfully impeached or not is a fact question for the board to weigh. It did weigh it. It found he wasn't successfully impeached. I think at least from Vibrant's perspective, that's indisputably the correct conclusion. It says plural. The fact that you could do it with one doesn't negate the disclosure of plural and the fact that that's the way one of ordinary skill in the art would read it. I guess I would close with the commercial success notion, which is simply that first of all, Vibrant came into existence ten years after this patent, so even if they were successful, I don't know what it would mean. But we don't know what the revenues were in the record. We don't know if they made a profit or lost millions. None of that. And that's the patentee's burden of production on commercial success before it would become a part of it. And so the board accorded it as a factual matter, little weight, which I'd respectfully submit it's inclined to do. So unless there are any further questions from the court, I would yield up my time to the courts better. Did you petition for a 102 in light of Van Hall? We did not, Your Honor, and that's an interesting question because I actually believe that Van Hall is a 102, and it's a point of curiosity that I don't think is necessary to review, but it's interesting. And to address Your Honor's question, I think that the term class codes, there was a concern that it would be argued by the patent owner that class code can't be a descriptor. And what Van Hall says is medical oncology, melanoma, those are descriptive. And the argument would be made, and so Anthony was brought in because Anthony has an explicit disclosure that that topic name could be a descriptor or a numerical index. So that kind of removed that argument. Turns out the patent owner didn't make that argument about class codes, perhaps because we had Anthony or perhaps because they just didn't believe it. But either way, that became a non-issue. And given that non-issue, I think Van Hall does, in fact, anticipate that that was not presented in the petition in that way. It was a combination with Anthony. Thank you. Your Honor, the issue was raised as to commercial success and that it's the patent owner's burden of proving it. The patent owner did, in fact, present evidence about commercial success. The fact that Vibrant came into existence long after the patent was filed is not relevant to the issue of the motivation, the commercial success. And in fact, although counsel said that evidence was not presented about revenue, revenue is not the only mechanism by which one can show commercial success. You can show adoption by large numbers of people. And it's exactly what the patent owner did. The patent owner pointed not only to the petitioner's own website, but it pointed to the fact that they themselves say that the important part is to provide the relevant opportunities, which are what occurs by using the class codes we were discussing earlier. And in fact, Your Honor, the result of this is that the there was a substantial adoption of the technology by users of the Vibrant system. Now, that having been said, in addition, there is a nexus between the commercial success and the claims because the thing that is actually causing the people to the advantage that Vibrant has of the relevancy. So your evidence about that the sales took place as a result of this invention I'm sorry, Your Honor, one more time. How do we know what is the evidence of the nexus between the sales and this patent? So, for example, Your Honor, the evidence is Vibrant's own websites that are described in the brief that say that 69 percent of the 500 women surveyed reported being more likely to pay attention to ads relevant to what they're reading. And so Dr. Mayor Patel describes the fact that it is the context that you can change you can use to change the links with that provides the relevance. As a result, we believe that the patent owner showed the nexus that's required. Also, Your Honor, one of the issues that was raised is whether or not Dr. Hellman's declaration should have been afforded any or little weight. Dr. Hellman didn't describe in his declaration what the standard was that he used in providing his opinions. He didn't say whether or not he used substantial evidence, clear and convincing preponderance. So without that, that is an underlying fact that the board should have required be in the petition itself, in the declaration that was filed with the petition itself. Dr. Hellman tried to belatedly patch it with a supplemental declaration later, but that's not sufficient. The petition itself has to show the invalidity of the claims. And as a result, the board could not have relied on Dr. Hellman's declaration as to what certain things meant or what his conclusions were without knowing what the level was that he was applying for the standard. If he was only applying substantial evidence, then he's not actually saying that by preponderance of the evidence, he found something to be true. So as a result, Dr. Hellman's declaration should have been excluded. Judge Shen, you look like you're skeptical. I don't have any questions. So the additional comment that I would make is that the petitioner has said that the patent owner hasn't pointed to the success of the earlier owners of the patent that I would submit to your honors. That's not actually relevant to the issue of commercial success. It only requires a linking of the claims to what caused the invention to be successful, which the patent owner believes has been done. Thank you. We thank both sides.